May it please the Court, my name is Anders Johnson. I represent the petitioner in this matter, Lin Huang. I think this case raises several issues with regard to whether or not the petitioner has met her burden of establishing asylum based on her persecution as a Christian. I think the first issue is based on her credibility, which was based mostly on her demeanor. As the judge found her testimony to be troubling, found it to be superficial, I think was the words of the immigration judge. And yet, at the same time, the immigration judge found that basically her testimony was consistent with her application. Excuse me, I'm sorry.  Our timer has... I wasn't keeping track, so... Give you time to rest. Are we ready? Thank you. The immigration judge made one specific statement about Ms. Huang's appearance. The I.J. says she hesitated frequently as if to assess the impact of the answers she provided. And then in the transcript, she, the immigration judge, mentions a couple of times that, or twice, that there was a long pause, like there has been. So there's one specific fact that the I.J. mentions and links it up to the adverse credibility determination. Now, is that enough for, to constitute substantial evidence to support such a determination? And if not, why not? I don't believe it does. And the reason is the hesitations, and I think two that were cited by the government in their brief had to do with why, she was asked why was her visa application denied, and she simply didn't know the answer to that. The other hesitation was with regard to why she didn't produce statements from her parents, statements from other church members, and why her attorney, the trial attorney, whether he had told her to get these documents. I don't think it was a matter of her trying to give the right answer. I think she simply didn't know what to say. Now, can we look behind the I.J.'s demeanor determination? We've said things like we give great deference to demeanor determinations because the I.J. is there and we're not, and that type of analysis. Can we look behind it, or what would give us the authority to do that? I don't necessarily think it's, I think it should be used, we should be giving deference to the judge. She obviously is there, and I wasn't there, you weren't there. But at the same time, it's troubling when basically the petitioner actually is being told her testimony was consistent with her statement, there's evidence to indicate in the record that her statement, her testimony was consistent with her credible fear interview. She's produced documents which have not been proven to be fraudulent or otherwise. She has submitted her case, and to simply discount it all based on, you know, the judge's observations that she seemed to be, you know, superficial, I think is, I think one needs to go beyond in that situation where she has presented consistent testimony. But what's the effect of this being a post-Real ID Act case where the language of the statute now I think says that the I.J. has to be persuaded and doesn't we don't take statements as true anymore? Right. And the I.J. can simply require more documentation. I will admit in this case, I would concede that getting parents' statements would have been really nice, and certainly something that was available since the bail received, which is pretty much the only document she presented beyond photographs of her baptism, were sent by her parents. So I think that was a legitimate concern that her parents could at least provide more testimony or provide more evidence with regard to the fact that the police are still looking for this woman, even several years after she left China. And so I think that other documentation maybe was not as available, easily available, as I say, as the parents' statement. There was talk of a baptism certificate which the Respondent or the Petitioner didn't even know if there was one, but said she could get one if, you know, if the judge wanted her to give it. I think that was back in several years ago. I think now judges are more inclined to say, okay, let's continue this hearing, get this documentation to prove it, to prove your case. That wasn't done in this case, obviously. But she did indicate, the Petitioner indicated in testimony that she certainly had no problem getting this information. And again, given that, you know, her testimony was consistent and she had produced what appeared to be legitimate documents, perhaps that was something the judge should have done before simply saying she didn't meet her burden because she didn't produce enough documents. So, but certainly judges has every right to request that information. Do you want to save the rest of your time for rebuttal? Yes. Do you have a question? I'm sorry. That's okay. Good morning, Your Honors. Joseph O'Connell on behalf of the Respondent, the Attorney General, Eric Holder. Your Honors, this is a case with two aspects. There's credibility on the one hand, and then there's the severity of harm aspect on the other. Now, the Court can deny the petition by affirming either aspect of the poor's decision. Now, first, regarding credibility, the IJ noted that Ms. Wong's testimony appeared to be memorized. Ms. Wong claimed to be an ardent believer, but she conceded that she sporadically attended Christian churches in the United States. She was also asked on more than one occasion why she failed to provide the most basic statements from her family, friends, the baptismal certificate, and she couldn't provide these documents and she couldn't really provide an answer as to why she couldn't provide these documents. Now, the IJ used these statements and her hesitations in answering these statements in finding her incredible. And the reviewing court, this court now has to review the totality of evidence, and the record has to compel the conclusion that Ms. Wong testified credibly. On the corroboration point, we have some cases, in some cases dicta, I think, suggesting that the IJ does have an obligation to continue a case in order to give the petitioner a chance to come up with corroborating evidence, and the IJ didn't do that here. How does that affect us? That's correct. But the IJ in this case didn't find that Ms. Wong didn't provide corroboration and therefore didn't satisfy her burden of proof. Instead, the IJ used Ms. Wong's hesitation and the fact that she couldn't, she didn't provide any evidence as part of the credibility determination in this case. But those corroboration cases don't apply because this isn't a corroboration case. This is a credibility case. Again, there's also the severity of harm aspect, which I'll address. But, again, the court has to review the totality of the evidence and determine whether the evidence as a whole compels the conclusion that Ms. Wong testified credibly. And there's instances of hesitation and there's omissions in evidence, and the court has to decide if that is enough to support the IJ's credibility determination. Now, however, even assuming that Ms. Wong testified credibly, the agency correctly concluded that Ms. Wong was still ineligible for asylum because the harm that she said that she suffered was not sufficiently severe enough to constitute persecution. Ms. Wong said that one security personnel officer grabbed her chin, pushed her to the ground, and then kicked her in the lower torso. As a side note, Ms. Wong said in her asylum application that the officer pinched her face. Now, as offensive as these circumstances are, they're simply not. Could you address, she was required to sign a paper, a document, saying that she wouldn't attend anymore, I think they called them illegal Christian activities. That's what she does, yes. We've held in other cases that if you, if a petitioner is not allowed to practice their religion, I think in some of the Falun Gong cases and the like, that that does constitute past persecution. Is this different? This is different. Ms. Wong was, she said she was made to sign a document that made her check in and she was precluded from engaging in any unlawful Christian activities, whatever those are. Number one, we don't have the document that she signed. And number two, there's evidence in the record, it's at the State Department report, that these house churches gather openly with minimal government supervision and they're not harassed. It's at page 157 of the record. In some parts of the country. But the IJ didn't make a you can relocate type finding, right? That's correct. Yeah, so we have the cases saying if you are precluded from practicing your religion, that's persecution. And the country report indicates there is oppression of these non-government approved churches. So if we take her, if we take the adverse credibility determination off the table and take her testimony as credible, I'm not sure why her testimony that she had to sign this paper wouldn't constitute persecution. Well, I would argue that the State Department report does not actually, it says that there's minimal supervision and that they can gather openly without government interference. And we do have cases that say the contrary, don't we? There are some cases that say the contrary. I think GU, G-U, the person was taken from a home church, was taken to prison, was held for four days, had to sign a letter they'd done wrong. I believe GU held that the harm was not sufficiently severe enough to constitute persecution. That's what I thought. Yes, yes. We have them. Yes, yes. We have them depending, if you look at specific facts. That's correct. It's a specific factual determination, yes. GU was very similar to this case. GU is strikingly similar. And, again, the results should coincide with GU in this case. Again, and this is a factual finding, and the Court has to review the records as a whole and conclude that the evidence compels a conclusion that is contrary to the agency. The Court has two bases to deny the petition for review, credibility and severity of harm. The Court can deny the petition on either basis. Unless there's any more questions, I'll let the judge counsel. Apparently not. Thank you, Your Honor. Let me address GU first. I think that, granted, there are similarities. She was detained for three days. She was interrogated. She was kicked. And was required for three days to do chores, pick up bricks, things of that sort. But she was 20 years old. And when she was released... You know, your voice drops, and we miss. At least I miss. I'm sorry, Your Honor. As one judge told me, I use my court voice sometimes. She was 20 years old. She was detained basically for her first time. And when she was released, she did have to report to the police. And now that she's here, she is wanted by the police for not reporting. So I don't know that... Again, counsel, this looks to me an awful lot like our GU case, G-U. Are you familiar with that? Yes. All right. It looks an awful lot like it. The person was taken and was held for four days, was kicked a couple times, or hit in the back with rods, and no permanent harm, no great harm done. Had to sign a letter that he'd been doing wrong. And we said, that's not enough. And we've got cases with, I admit, where more has happened, though. The person also has lost a job and things like that. Well, in this case, she didn't have a job. She was only, as I say... But I would submit... This looks an awful lot like GU. To some extent it is. But I would submit that based on her age, based on the fact that she had to continue to report, she could not only not practice her religion, but she was under surveillance. So did GU have to report? Did GU have to relinquish his religion? That was my concern about GU, was that he signed a paper saying, I've done wrong. She signed a paper saying, I won't practice my religion anymore, essentially. So I was concerned about that distinction. Is that a significant distinction, or is it essentially the same type of document that she was signing? Well, we don't know, because obviously we don't have the documents. We don't know. But given that not only did she have to sign the paper saying she's not to participate in these activities anymore, she didn't participate in these activities. She indicated she prayed at home, and was basically confined to that aspect of her religion, which is, I would submit, a form of persecution in and of itself. Thank you for your argument. This case is submitted.
judges: Farris, Fernandez, Ikuta